UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| EMILIO SANTELISES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-11164-NMG |
| BANK OF AMERICA, N.A., *as successor by merger to* BAC HOME LOAN SERVICING, LP and FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

October 22, 2012

SOROKIN, C.M.J.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants, Bank of America, N.A. ("Bank of America") and Federal Home Loan Mortgage Corporation ("Freddie Mac"), seek dismissal of the Complaint filed against them by the plaintiff, Emilio Santelises. For the reasons that follow, I recommend that the motion (docket # 5) be ALLOWED.

I.    BACKGROUND

The following facts are drawn from the Complaint and the documents referenced therein.[1]

---

[1] On a motion to dismiss, the Court may consider documents "expressly incorporated" into the complaint, as well as those "relie[d] upon [in the complaint and] whose authenticity is not challenged." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). Santelises has not objected to the defendants' submission of two letters referenced in the Complaint. See generally Doc. No. 14.

1

See Doc. Nos. 1-1, 6-1, 6-2.  Santelises purchased a home in Seekonk, Massachusetts, in 2006. Doc. No. 1-1 at ¶¶ 1, 5.  Bank of America serviced Santelises's mortgage, which Freddie Mac held.  Id. at ¶¶ 7, 22.  In late 2009, Santelises fell behind on his mortgage payments.  Id. at ¶ 9. After receiving notice of the need to cure his default, Santelises applied for a loan modification pursuant to the Home Affordable Modification Program ("HAMP") in February 2010.[2]  Id. at ¶¶ 20-21.

On March 28, 2010, a Bank of America representative confirmed receipt of the HAMP application and informed Santelises his request was being reviewed.  Id. at ¶ 26.  In April 2010, while the application was pending, Santelises received a letter from a law firm stating Bank of America had referred Santelises's account for foreclosure.  Id. at ¶ 28.  Santelises contacted Bank of America twice thereafter, in April and May 2010, and was told that review of his application was ongoing.  Id. at ¶¶ 29-30.  On June 8, 2010, a Bank of America representative informed Santelises that more information regarding his income was needed in order to determine his eligibility for a loan modification.[3]  Id. at ¶ 31.

Bank of America and its foreclosure counsel sent additional foreclosure notices to Santelises on June 30 and July 15, 2010, respectively, id. at ¶¶ 33-34, and then initiated a state-

---

[2]HAMP is a federal program funded by the Emergency Economic Stabilization Act of 2008 and intended to help homeowners avoid foreclosure.  See 12 U.S.C. §§ 5201, 5211-5241; Markle v. HSBC Morg. Corp. (USA), 844 F. Supp. 2d 172, 175 (D. Mass. 2011).  It requires loan servicers to comply with certain guidelines and "prevents lenders from proceeding with foreclosure until a homeowner has been evaluated for eligibility for assistance under its criteria." Brown v. Bank of Am. Corp., No. 10-cv-11085, 2011 WL 1311278, at *1 (D. Mass. Mar. 31, 2011).

[3]It is unclear whether Santelises submitted further documentation at that time.  See Doc. No. 1-1 at ¶¶ 31-32.  For purposes of the pending motion, the Court will assume he submitted the requested documents.

court action on July 20, 2010 seeking permission to proceed with a foreclosure sale, id. at ¶ 35.

At Bank of America's request, Santelises submitted another HAMP application with additional financial documentation on July 31, 2010. Id. at ¶ 37. Foreclosure counsel wrote to Santelises on August 10, 2010, stating he owed more than $23,000 to "reinstate his loan." Id. at ¶ 39. Bank of America denied Santelises's request for a loan modification on September 20, 2010, explaining he was not eligible for HAMP relief because even the highest monthly payments he could be expected to make, based on his income, would result in "excessive forbearance." Id. at ¶ 40; Doc. No. 6-2.

Santelises submitted another HAMP application a week later, accompanied by updated financial information. Doc. No. 1-1 at ¶ 43. On October 5, 2010, foreclosure counsel sent Santelises a letter notifying him that the foreclosure sale of his home had been scheduled for November 4, 2010. Id. at ¶ 45. Ten days later, a Bank of America representative told Santelises that his latest HAMP application was being reviewed, but that the foreclosure sale would proceed as scheduled. Id. at ¶ 46. Bank of America refused three subsequent requests by Santelises that the sale be postponed. Id. at ¶ 48. Then, on November 2, 2010, Bank of America relented; the foreclosure sale was postponed until December 3, 2010, and then again until January 13, 2011. Id. at ¶¶ 49, 51.

An unnamed Bank of America representative informed Santelises by telephone on December 16, 2010, that his request for a loan modification had been granted, that the foreclosure would be suspended, that he would receive a Trial Payment Plan ("TPP") requiring three monthly payments of $1,146, and that after such payments were made the modification would become permanent. Id. at ¶¶ 52-53. Santelises, however, never received a TPP, and on

January 19, 2011, a Bank of America representative told him his HAMP application had been returned to underwriting for further review. Id. at ¶¶ 55-57.

On March 10, 2011, Santelises learned that the foreclosure sale of his home had been rescheduled for April 18, 2011. Id. at ¶ 59. Six days before the scheduled sale, a Bank of America representative informed Santelises that the sale would be postponed while his loan modification request was being reviewed. Id. at ¶ 60. Nevertheless, foreclosure counsel conducted the sale as scheduled. Id. at ¶ 62. Beginning on April 21, 2011 and continuing through August 15, 2011, Santelises contacted Bank of America more than a dozen times requesting that it voluntarily rescind the sale. Id. at ¶¶ 63-64. On August 17, 2011, Bank of America denied Santelises's request. Id. at ¶ 66.

Freddie Mac received title to the home after the sale, recorded a foreclosure deed, and initiated eviction proceedings in state court.[4] Id. at ¶¶ 67-68.

Santelises sued the defendants in May 2012 in the Bristol County Superior Court for the Commonwealth of Massachusetts, seeking a declaration that the foreclosure deed is void, and alleging claims of promissory estoppel, negligent misrepresentation, and a violation of Chapter 93A of the Massachusetts General Laws. Doc. No. 1-1. The defendants removed the action to this Court on June 28, 2012, Doc. No. 1, and thereafter moved to dismiss the complaint in its entirety, Doc. Nos. 5-6. Santelises opposed the motion,[5] Doc. Nos. 13-14, and the defendants

---

[4]Those proceedings have been dismissed, Doc. No. 1-1 at ¶ 68 n.4, presumably due to the pendency of this action, and Santelises apparently remains in the home, Doc. No. 6 at 3.

[5]Santelises's brief does not address the elements of each specific claim, nor does it request leave to amend the Complaint in the event the defendants' motion is granted with respect to any claim. See generally Doc. No. 14.

replied, Doc. No. 17.  The motion was referred to the undersigned Magistrate Judge for a Report and Recommendation on September 6, 2012.  Doc. No. 15.

II.     STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized."  United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992).  Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense."  Id. at 679; accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); accord Maldonado, 568 F.3d at 268.

III. DISCUSSION

    A. Declaratory Judgment

In Count I of the Complaint, Santelises seeks a declaration that the foreclosure deed is void, arguing that Bank of America: (i) violated HAMP guidelines by foreclosing while a request for loan modification was pending; and (ii) breached its promises to provide a TPP, and to delay the April 18, 2011 foreclosure sale. Doc. No. 1-1 at ¶¶ 72-81. This count, which essentially turns on allegations that the defendants breached contractual obligations, fails to state a plausible claim for declaratory relief for two reasons.

First, various sessions of this Court, as well as a majority of District Courts in other jurisdictions, have held that there is no private right of action under HAMP. See Okoye v. Bank of N.Y. Mellon, No. 10-cv-11563, 2011 WL 3269686, at *7 n.10 (D. Mass. July 28, 2011) (Woodlock, J.) (collecting cases); see also, e.g., Speleos v. BAC Home Loans Servicing, L.P., 766 F. Supp. 2d 304, 308-10 (D. Mass. 2010) (Gorton, J.); Young v. Wells Fargo Bank, N.A., No. 11-cv-10757, 2012 WL 734187, at *4 (D. Mass. Mar. 7, 2012) (Sorokin, C.M.J.). Santelises does "not have standing to enforce HAMP provisions absent defendants' violation of a contractual provision to which [Santelises is a] part[y]." McBride v. Am. Home Mortg. Servicing, Inc., No. 11-cv-10998, 2012 WL 931247, at *3 (D. Mass. Mar. 19, 2012) (Zobel, J.). As such, he may not obtain a declaration nullifying the foreclosure deed based on allegations that Bank of America failed to abide by its obligations under HAMP.

Second, the other promises Santelises claims Bank of America breached do not constitute binding oral contracts and, thus, cannot be enforced through a declaratory judgment claim.[6] In order for such promises to "create an enforceable contract, there must be an agreement between the parties on the material terms of the contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000); accord Anilus v. OneWest Bank, FSB, No. 201001774, 2011 WL 2735052, at *1 (Mass. Super. Ct. May 3, 2011).[7] No binding agreement arises where the parties have not progressed beyond the stage of negotiation. Situation Mgmt. Sys., 724 N.E.2d at 703. In addition, there must be consideration, "a necessary element of any contract claim." Anilus, 2011 WL 2735052, at *2 (citing Singarella v. City of Boston, 173 N.E.2d 290, 291 (Mass. 1961)).

The promises identified by Santelises were made during December 2010 and April 2011 calls from Santelises to Bank of America representatives, Doc. No. 1-1 at ¶¶ 52, 60, and appear to fall squarely within the bounds of non-binding "negotiation." See Anilus, 2011 WL 2735052, at *1 (finding an "'agreement to agree' . . . did not rise to the level of an enforceable contractual obligation"). Moreover, they are wholly unsupported by any valid consideration. Although Santelises alleges he knew the amounts of the modified payments that would be due under the promised TPP, id. at ¶ 53, he does not allege he ever made (or agreed to make) such payments between the December 2010 telephone call and the April 2011 foreclosure sale.[8] Neither

---

[6] Santelises does not allege his mortgage – the only written contract to which he was a party – contained a provision requiring Bank of America to modify his loan or postpone a foreclosure sale of his home under certain circumstances. See generally Doc. No. 1-1.

[7] The parties agree that Massachusetts substantive law applies here.

[8] In fact, Santelises does not allege he made any payments at all after his fall 2009 default.

7

"compli[ance] with the loan modification application process," nor agreeing to make payments that are otherwise required pursuant to a valid mortgage, can constitute consideration in these circumstances. See Anilus, 2011 WL 2735052, at *2. In addition, Santelises does not allege he agreed to (or satisfied) any other terms that might have been included in a TPP, such as credit counseling or providing additional disclosures. See Durmic v. J.P. Morgan Chase Bank, N.A., No. 10-cv-10380, 2010 WL 4825632, at * (D. Mass. Nov. 24, 2010) (finding sufficient consideration alleged and permitting breach-of-contract claim to survive motion to dismiss where plaintiffs executed TPPs, made required payments, and satisfied additional terms of TPPs beyond preexisting duties under their mortgages). Thus, the Complaint describes no assurances made by Santelises, nor any benefit to be conferred upon Bank of America, in connection with the alleged promises. This lack of consideration renders the promises unenforceable as a matter of law, whether through a breach-of-oral-contract claim or through a request for declaratory judgment.

    B.    Promissory Estoppel

Santelises seeks, in Count II of the Complaint, to enforce the same alleged promises he identified in Count I, this time via promissory estoppel. Doc. No. 1-1 at ¶¶ 83-87. His failure to allege any reasonable or detrimental reliance on either promise, however, warrants dismissal of this claim as well.

To plead promissory estoppel under Massachusetts law, Santelises must allege: 1) a representation by Bank of America "intended to induce a course of conduct" by Santelises; 2) "an act or omission [by Santelises] resulting from the representation"; and 3) "detriment to [Santelises] as a result of the act or omission." Durmic, 2010 WL 4825632, at *5. Although often "asserted as a substitute for a failure of consideration," id., a party invoking promissory

estoppel still must demonstrate reasonable and detrimental reliance on the promise he seeks to enforce.  See Kiely v. Raytheon Co., 105 F.3d 734, 736 (1st Cir. 1997).  Santelises has alleged no such reliance.

The only action Santelises claims he took in response to either of the alleged promises he seeks to enforce is that he "ceased his attempts to stop [Bank of America's] contemplated foreclosure sale of his home."  Doc. No. 1-1 at ¶ 54; see also id. at ¶ 85 (alleging "he abstained from taking any other action to avoid the threat of foreclosure").  In other words, the most the Complaint alleges is that Santelises, upon hearing the promises, temporarily stopped calling Bank of America periodically to ask its representatives not to foreclose on his home despite his admitted failure to make any mortgage payments for more than a year.  It does not allege, for example, that he mailed the first payment he expected would be due under the anticipated TPP, deferred taking steps to collect evidence showing his financial outlook had improved enough to render him eligible for a HAMP modification, enrolled in credit counseling, or suspended meaningful efforts to locate alternative housing for his family.

Even assuming that Santelises has sufficiently pleaded "an act or omission . . . resulting from" the promises at issue, the Complaint is silent as to the detriment that resulted therefrom. See Durmic, 2010 WL 4825632, at *5.  Santelises does not explain – and it is not apparent – what additional "attempts to stop [the] contemplated foreclosure sale" he would have undertaken between December 2010 and April 18, 2011 had the promises not been made, or how such efforts plausibly would have either prevented the foreclosure sale despite his continued failure to make mortgage payments, or resulted in a modification of his loan despite the previous determination of ineligibility under HAMP.  Absent such allegations, Santelises may not recover

9

on a theory of promissory estoppel.

    C.    <u>Negligent Misrepresentation</u>

In Count III, Santelises claims negligent misrepresentation based on the alleged assurance by a Bank of America representative on December 16, 2010 that a TPP would issue and, if accepted and satisfied by Santelises, would result in a permanent loan modification. <u>See</u> Doc. No. 1-1 at ¶¶ 89-93 (seeking damages and rescission of the foreclosure sale). This claim suffers from shortcomings similar to those identified with respect to Counts I and II.

To state a claim of negligent misrepresentation, Santelises must show that Bank of America, "in the course of [its] business, supplied false information for the guidance of another upon which [Santelises] justifiably relied to his financial detriment and that [Bank of America] failed to exercise reasonable care or competence in obtaining or communicating the information." <u>Cole v. New Eng. Mut. Life Ins. Co.</u>, 729 N.E.2d 319, 323 (Mass. App. Ct. 2000); <u>accord</u> <u>Gossels v. Fleet Nat'l Bank</u>, 902 N.E.2d 370, 377 (Mass. 2009).

Santelises's failure to allege detrimental reliance on the defendants' promises – whether true or false when made and, if false, whether intentionally or negligently conveyed – is fatal to his negligent misrepresentation claim as well. As discussed above in the context of promissory estoppel, Santelises's assertion that the defendants' promises caused him "not to take any action to prevent [the] foreclosure and sale of his property" while awaiting the TPP, Doc. No. 1-1 at ¶ 92, is not a plausible claim that he "justifiably relied to his financial detriment" on the defendants' promises.[9] <u>Cole</u>, 729 N.E.2d at 323; <u>see also</u> <u>Gossels</u>, 902 N.E.2d at 378. As such,

---

[9]As the defendants note, the plausibility of any claim by Santelises that he detrimentally relied on either of the promises he cites is undermined by the timing of events set forth in his Complaint. Although he claims he was promised a TPP on December 16, 2010, he admits that

Count III fails to state a claim upon which relief can be granted.

   D.   Chapter 93A

Finally, Santelises seeks relief pursuant to the Massachusetts Consumer Protection Act in Count IV, based on the defendants' "disregard and non-compliance with HAMP," which Santelises alleges was "willful or knowing." Doc. No. 1-1 at ¶¶ 95-102. He has not, however, pleaded facts sufficient to permit the Court "to infer more than the mere possibility of misconduct" for purposes of Chapter 93A. Iqbal, 556 U.S. at 679.

"To prevail on a Chapter 93A claim, [Santelises] 'must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that [Santelises] suffered a loss of money or property as a result.'" Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (quoting Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005) (Gorton, J.)). To determine whether an act is "unfair" for purposes of Chapter 93A, courts consider: "(1) whether the practice is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers . . . ." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) (quotation and alterations omitted). An act is "deceptive" for these purposes "if it could reasonably be found to have caused a person to act differently from

---

promise was rescinded on January 19, 2011. Doc. No. 1-1 at ¶ 57. Thus, any justifiable reliance on that promise necessarily ended three months before the foreclosure sale. Similarly, without providing additional context or details regarding the conversation, Santelises claims he was promised on April 12, 2011 that the foreclosure sale would be postponed from April 18, 2011 to an unspecified date. Id. at ¶ 60. He does not, however, explain what steps he might have taken to prevent the sale in the six days leading up to it.

the way he otherwise would have acted." Lowell Gas Co. v. Attorney Gen., 385 N.E.2d 240, 249 (Mass. 1979); accord Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486-87 (Mass. 2004).[10]

"The failure to modify a loan under HAMP, without more, cannot constitute a Chapter 93A violation." Okoye, 2011 WL 3269686, at *8. However, "[a] violation of HAMP that is unfair or deceptive in and of itself could . . . create a viable claim under Chapter 93A even though HAMP does not provide a private cause of action." Kozaryn v. Ocwen Loan Servicing, LLC, 784 F. Supp. 2d 100, 102 (D. Mass. 2011) (Gorton, J.); see also Markle, 844 F. Supp. 2d at 185. Judges in this district have conducted a three-part inquiry to decide whether a 93A claim will lie for violations of HAMP guidelines:

> (1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under chapter 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the 'objectives and enforcement mechanisms' of HAMP?

Ording v. BAC Home Loans Servicing, LP, No. 10-cv-10670, 2011 WL 99016, at *7 (D. Mass. Jan. 10, 2011); accord Young, 2012 WL 734187, at *7; Okoye, 2011 WL 3269686, at *8; see also McBride, 2012 WL 931247, at *4.

Santelises alleges the following violations of HAMP guidelines by the defendants: 1) failure to confirm receipt of Santelises's various HAMP applications within ten days of their submission, e.g., Doc. No. 1-1 at ¶¶ 23, 25; 2) failure to timely inform Santelises whether his applications were complete or whether additional information was needed, e.g., id. at ¶¶ 24, 26,

---

[10] "[T]he boundaries of what may qualify for consideration as a [Chapter 93A] violation is a question of law." Schwanbeck v. Fed.-Moqul Corp., 578 N.E.2d 789, 804 (Mass. App. Ct. 1991); accord Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008).

29; 3) referral of Santelises's account for foreclosure before his application was evaluated for HAMP eligibility, e.g., id. at ¶¶ 27-28; 4) failure to explain the basis for Bank of America's determination that Santelises was not eligible for a HAMP modification, id. at ¶¶ 40-41; and 5) failure to postpone the foreclosure sale of Santelises's home while his reapplication for a HAMP modification was under review, e.g., id. at ¶¶ 27, 60, 62.

As an initial matter, the fourth alleged violation – that Santelises was not informed of the reason for Bank of America's denial of his HAMP application – is inaccurate. The September 20, 2010 letter notifying Santelises of his ineligibility is described in the Complaint, Doc. No. 1-1 at ¶ 40, and a copy has been submitted by the defendants as an exhibit to their motion, Doc. No. 6-2. Notwithstanding Santelises's representation to the contrary, the letter explains his loan does not qualify for a modification "for the reason stated below":

> **Excessive Forbearance.** Your loan is not eligible for a Home Affordable Modification because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program. In other words, to create an affordable payment for you, the investor (owner) of your loan would be required to delay collecting too large a portion of your principal balance until the loan pays off, beyond what the Home Affordable Modification Program allows.

Id. Accordingly, Santelises has not stated a violation of the HAMP guideline requiring notice of the basis for a denial of HAMP relief.

The remaining four allegations satisfy the first step of inquiry set forth above. They do not, however, rise to the level of "independently actionable conduct" under Chapter 93A, as none of the alleged violations are "unfair" or "deceptive" for purposes of that provision. The first two – failure to acknowledge receipt of the applications and confirm their completeness within the time periods specified by the relevant HAMP guidelines – are the sort of "meager allegations"

that "are not sufficient to state a claim under chapter 93A." Markle, 844 F. Supp. 2d at 186. This is especially so where Santelises admits Bank of America ultimately did acknowledge receipt and discuss the completeness of more than one of his HAMP applications before proceeding with the foreclosure sale. See Doc. No. 1-1 at ¶¶ 26, 29-31, 46, 50.

Nor are the third and fourth alleged violations – referral of Santelises's account for foreclosure review before a HAMP eligibility determination had been rendered, and failure to approve or deny Santelises's reapplication for a loan modification before proceeding with the foreclosure sale – facially unfair or deceptive. Intermittent correspondence regarding foreclosure proceedings that were repeatedly deferred to permit review of HAMP applications is not patently "unethical[] or unscrupulous[]" behavior, and Santelises has not explained why the Court should conclude otherwise. See Markle, 844 F. Supp. 2d at 186. Despite the referral to foreclosure counsel, the foreclosure sale did not take place until Santelises's first round of applications had been fully reviewed and denied. See Doc. No. 1-1 at ¶¶ 28, 40, 59. The defendants waited approximately a year and a half after Santelises's default to proceed with a foreclosure sale of his home, and they only did so after considering his HAMP application, seeking additional information, finding him ineligible for a modification, and then reviewing his subsequent reapplications. Santelises does not allege any change in circumstance (i.e., an increase in income or other assets) following the September 2010 finding of ineligibility that should have altered Bank of America's initial "excessive forbearance" determination.[11] Under these circumstances,

---

[11] The HAMP guideline and directive identified by Santelises as restricting foreclosure referrals while his HAMP applications were under review, see Doc. No. 1-1 at ¶ 27, prohibit foreclosure referrals and sales only until a borrower has been deemed ineligible for a modification. See, e.g., HAMP Supplemental Directive 10-02 at 5-6 (Mar. 24, 2010), available at https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd1002.pdf (last visited

Santelises has not alleged the type of unfair or deceptive behavior that would violate Chapter 93A. Count IV, therefore, like the three counts preceding it, fails to state a claim.[12]

IV. <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that defendants' Motion to Dismiss the Complaint (docket # 5) be ALLOWED.[13]

SO ORDERED.

/s / Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge

---

Oct. 22, 2012).

[12]Santelises's short opposition to the defendants' motion focuses entirely on demonstrating that "HAMP does not preempt state law rights," Doc. No. 14 at 2, and that lawsuits brought against mortgage servicers can survive motions to dismiss. As a general matter, Santelises is certainly correct. <u>See, e.g.</u>, <u>Durmic</u>, 2010 WL 4825632 (where plaintiffs alleged TPPs were offered and accepted, but modifications were not made permanent as promised despite borrowers' compliance with all TPP terms, state-law claims including breach of contract, promissory estoppel, and chapter 93A violations could proceed). Here, however, Santelises has not pleaded facts sufficient to state the elements of any state-law claims.

[13]The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. <u>See</u> Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4 (1st Cir. 1986); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).